UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEAN-MAX DARBOUZE,<br><br>                  Plaintiff,<br><br>        v.<br><br>SPENCER, et al.,<br><br>                  Defendants. | No.  2:23-cv-1419-WBS-CSK P<br><br><br>FINDINGS & RECOMMENDATIONS |

I.      INTRODUCTION

Plaintiff is a state prisoner proceeding pro se.  Defendants' fully briefed motion for summary judgment is before the Court.  Defendants move for summary judgment on the grounds that they were not deliberately indifferent to plaintiff's serious medical needs under the Eighth Amendment, and are entitled to qualified immunity.  As discussed below, the Court recommends that the motion be granted.

II.     PROCEDURAL HISTORY

Plaintiff commenced this action by filing a complaint on July 17, 2023.  (ECF No. 1.) On February 2, 2024, the undersigned magistrate judge found that, for screening purposes, the complaint stated cognizable claims against defendants Dr. Spencer and Dr. Kim for violating plaintiff's Eighth Amendment rights.  (ECF No. 5.)  The Court subsequently found that plaintiff's cognizable claims were against defendants in their individual capacities only.  (ECF Nos. 32 &

1

55.)  Both defendants answered the complaint.  (ECF Nos. 37 & 57.)

Defendants filed the instant motion for summary judgment on November 13, 2025.  (ECF No. 64.)  Plaintiff filed an opposition on January 9, 2026.  (ECF No. 69.)  Defendants filed a reply on February 13, 2026. (ECF No. 72.)  Briefing is complete.

III.    COMPLAINT

In his verified  complaint, plaintiff alleges that, in 2019, while housed at High Desert State Prison ("HDSP"), his Eighth Amendment rights were violated by Dr. Spencer's refusal to change plaintiff's medication for his serious mental health needs including severe depression and chronic insomnia, despite plaintiff informing Dr. Spencer on multiple occasions that the prescribed medications were not working, and such refusal made plaintiff's symptoms worse.  Dr. Spencer diagnosed plaintiff as suffering from polysubstance personality dependence, adjustment disorder with anxiety and disturbance of mood, with anti-social personality disorder.  Dr. Spencer allegedly informed plaintiff that he could "target his own symptoms of depression" by establishing and maintaining a level of participation in assigned and prescribed programming to improve [plaintiff's] insight into [his] numerous mental health difficulties."  (ECF No. 1 at 9.)  Plaintiff claims he repeatedly informed Dr. Spencer that plaintiff was "completely [in]capacitated due to severe depression, suicidal ideations, lack of sleep and lack of appetite."  (Id.)

While at HDSP, on September 15, 2020, plaintiff reported he was suffering from left arm and shoulder pain.  Plaintiff's primary care physician, Dr. R. Kim, allegedly refused to provide alternative pain medication when plaintiff reported that the Tylenol and Naproxen failed to treat plaintiff's chronic and severe shoulder pain and refused to prescribe Lyrica.  In early 2021, plaintiff informed Dr. R. Kim that plaintiff's chronic and severe pain was now in both shoulders, and he was having difficulty breathing at night due to the pain, his asthma, and his inability to sleep due to his severe episodes of depression, and plaintiff requested a CPAP to assist him at night, which was denied.  Plaintiff also informed Dr. R. Kim that in 2011 he suffered a serious head injury as well as injury to his torso from a motor vehicle accident.  Plaintiff requested a CT scan of his brain due to his headaches and increased depression and other mental health issues that were worsening.  But Dr. R. Kim allegedly refused to schedule plaintiff for any additional

2

tests or to see specialists trained in head injuries.

Plaintiff seeks, <u>inter alia</u>, money damages.

IV.    LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  <u>Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)</u>, 627 F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp.</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56 advisory committee notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>Celotex Corp.</u>, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Id.</u> at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the

allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled on other grounds as stated in Flood v. Miller, 35 F. App'x 701, 703 n.3 (9th Cir. 2002).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes to 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

4

trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

In the discovery and scheduling order filed on May 14, 2024, plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 26 at 6-7) (citing Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc).)

V.     UNDISPUTED FACTS

For purposes of summary judgment, the undersigned finds these facts are undisputed. Where plaintiff failed to properly address defendants' assertion of fact as required, this Court considers the fact undisputed.[1] See Fed. R. Civ. P. 56(e)(2).

1. Plaintiff is a California state prison inmate who, at all relevant times, was housed at High Desert State Prison (HDSP) in Susanville, CA. (DSUF 1.)

A.  Defendant Dr. Kim

2. Dr. Kim is a Doctor of Osteopathic Medicine with over ten years of clinical experience. From July 2017 to November 2020, he was employed as a correctional physician by California Correctional Health Care Services ("CCHCS") in Elk Grove, California. (DSUF 26, 27.)

3. Dr. Kim's only interactions with plaintiff occurred on August 5, August 28, September 17, October 8, November 4, and November 10, 2020, in six telemedicine consultations conducted over videoconference while plaintiff was housed at HDSP. (DSUF 30.)

4. During the August 5, 2020 telemedicine consultation, plaintiff requested a change in his medication because he claimed that over-the-counter medications were not alleviating his back pain symptoms. Dr. Kim performed a physical examination and found plaintiff had experienced an acute flare of chronic lower back pain due

[1]  In opposing summary judgment, plaintiff did not address defendants' Statement of Undisputed Facts ("DSUF"). Rather, he made certain factual claims in his brief and attached almost 200 pages of medical records. (ECF No. 69.) It is not the Court's task "to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).

to mechanical issues, a common condition. Dr. Kim prescribed plaintiff a corticosteroid medication and educated him about Rest, Ice, Compression and Elevation ("RICE") to alleviate pain and reduce inflammation. Dr. Kim ordered an X-ray of plaintiff's lumbar spine and referred him to a physical therapy evaluation for his back.  (DSUF 33-38.)

5.  During the August 28, 2020 telemedicine consultation, Dr. Kim performed a physical examination of plaintiff, reviewed the diagnostic results of the X-ray that had been taken in June 2020, and found plaintiff to have joint osteoarthritis in his right shoulder, a common condition.  Dr. Kim prescribed plaintiff a ten-day course of NSAID (Naprosyn) for back pain and ordered an X-ray of plaintiff's neck. Plaintiff requested narcotics for his pain, but Dr. Kim informed him that, in his professional medical opinion, there was no medical indication for narcotics for plaintiff's chronic musculoskeletal issues.  (DSUF 40-49.)

6.  During the September 17, 2020 telemedicine consultation, Dr. Kim performed a physical examination of plaintiff.  Plaintiff denied having any issues or problems aside from dry eyes.  Dr. Kim prescribed an ocular lubricant.  (DSUF 51-54.)

7.  During the October 8, 2020 telemedicine consultation, Dr. Kim attempted to perform a physical examination of plaintiff, but plaintiff refused because he was wearing a sling on his left arm and reportedly had too much pain at the time.  Dr. Kim prescribed plaintiff acetaminophen and NSAID (Naprosyn) for ten days for left shoulder pain.  Dr. Kim ordered a lay-in (i.e., bed rest) for two weeks and another X-ray of plaintiff's left shoulder, and referred plaintiff to a physical therapy evaluation for his left shoulder.  Plaintiff requested a prescription for Lyrica, an anticonvulsant medication, primarily used to treat neuropathic pain, fibromyalgia, and as an adjunct therapy for partial seizures.  Dr. Kim informed plaintiff that, in his professional medical opinion, Lyrica was not recommended at that time.

8.  During the October 8, 2020 telemedicine consultation, plaintiff did not tell Dr.

6

Kim that he had suffered a serious head injury from a motor vehicle accident in 2011. Plaintiff did not request a CT scan of his brain due to headaches, an increase in depression, or other mental health issues. Plaintiff did not request that Dr. Kim schedule him for specialized tests or refer him to a head injury specialist, nor did he request a CPAP machine to assist him with difficulty breathing at night. (DSUF 66-69.)

9. During the November 4, 2020 telemedicine consultation, plaintiff reported that he did not want to attend physical therapy because it was too painful. Dr. Kim performed a physical examination of plaintiff, which indicated he had limited mobility in his left shoulder. Dr. Kim reviewed the results of a December 2019 X-ray of plaintiff's left shoulder, which showed mild joint arthropathy but no acute fracture or dislocation. Dr. Kim directed plaintiff to continue with his physical therapy and not refuse physical therapy. (DSUF 72-77.)

10. During the November 10, 2020 telemedicine consultation, Dr. Kim was seeing plaintiff to treat his complaints of asthma, chest congestion, and bilaterial wheezing. Plaintiff denied having any other issues at the time, including shortness of breath. Dr. Kim reviewed plaintiff's asthma control test results, which indicated a significant exacerbation of asthma symptoms. Dr. Kim reviewed plaintiff's pulmonary function tests, which showed mild obstructive disorder. Dr. Kim performed a physical examination of plaintiff, which indicated bilateral wheezing and diminished lung capacity. Dr. Kim prescribed an aerosol maintenance inhaler for plaintiff, to be self-administered orally twice per day for 120 days, and a long-acting bronchodilator that helps open the airways, making it easier to breathe. (DSUF 79-86.)

B. Defendant Dr. Spencer

11. Dr. Spencer is a licensed Clinical Psychologist and a psychotherapist in private practice, with approximately ten years of professional experience. (DSUF 87.)

12. From December 2015 to September 2021, Dr. Spencer was employed by CCHCS

7

as a Clinical Psychologist (Safety) at HDSP.  (DSUF 89.)

13.  In his capacity as a Clinical Psychologist at HDSP, Dr. Spencer did not have the authority to prescribe medication of any kind to an incarcerated person.  (DSUF 93.)

14. Dr. Spencer's interactions with plaintiff occurred during twelve individual psychotherapy appointments at HDSP between September 16, 2019 and December 10, 2020. (DSUF 97.)

15. During none of Dr. Spencer's psychotherapy consultations with plaintiff did plaintiff ask Dr. Spencer to prescribe medication of any kind to him or otherwise alter his medication regimen, nor could Dr. Spencer have done so had plaintiff made such a request.  (DSUF 99.)

16. Prior to each of Dr. Spencer's psychotherapy consultations with plaintiff, Dr. Spencer reviewed plaintiff's mental health history.  During the visit, Dr. Spencer attempted to discuss plaintiff's symptoms and mental health status, plaintiff was given an opportunity to ask questions, and plaintiff expressed understanding and verbalized his understanding regarding treatment.  (DSUF 100, 101.)

17. Dr. Spencer's responses to plaintiff's mental health treatment needs of which Dr. Spencer was aware were reasonable according to Dr. Spencer's education, training, and experience.  (DSUF 102.)

18. At the initial September 16, 2019 psychotherapy consultation, Dr. Spencer explained to plaintiff that changes in his level of care were determined by his Interdisciplinary Treatment Team ("IDTT") and not by Dr. Spencer personally. (DSUF 107, 125.)

VI.    EIGHTH AMENDMENT MEDICAL INDIFFERENCE

A. Legal Standards

The Constitution requires prison officials to provide inmates with reasonably adequate medical care.  See Estelle v. Gamble, 429 U.S. 97, 103 (1976).  To hold an official liable for violating this duty under the Eighth Amendment, the inmate must satisfy two prongs, an objective

8

prong and subjective prong. First, the inmate must suffer from a serious medical need (the objective prong); and second, the official must be deliberately indifferent to the inmate's serious medical need (the subjective prong). See Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta, 744 F.3d 1082-83; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012). A medical need is "serious" if the failure to treat "could result in further significant injury or the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted).

The "second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. (internal citations omitted). This standard requires that the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer, 511 U.S. at 837. This "subjective approach" focuses only "on what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)…" Farmer, 511 U.S. at 839. Deliberate indifference is a higher standard than medical negligence or malpractice, and a difference of opinion between medical professionals—or between a physician and the prisoner—generally does not amount to deliberate indifference. See Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996), overruled in part on other grounds by Peralta, 744 F.3d at 1076.

Neither will an "inadvertent failure to provide medical care" sustain a claim. See Estelle, 429 U.S. at 105. Misdiagnosis alone is not a basis for a claim, see Wilhelm, 680 F.3d at 1123, and a "mere delay" in treatment, "without more, is insufficient to state a claim of deliberate medical indifference," Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Instead, a prisoner must show that a delay "would cause significant harm and that defendants should have known this to be the case." Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002).

///

///

9

B. Discussion

Here, even assuming arguendo that plaintiff had objectively serious medical needs consisting of back, neck, and left shoulder pain and mental distress (the objective prong), plaintiff has failed to adduce evidence that either defendant Dr. Kim or defendant Dr. Spencer were deliberately indifferent to those needs (the subjective prong).

As to Dr. Kim, the undisputed facts show that this physician conducted six telemedicine consultations with plaintiff over a roughly three-month period. When plaintiff requested a change in medication for his chronic back pain in August 2020, Dr. Kim examined him, diagnosed him, prescribed medication and methods to alleviate the pain, ordered an X-ray, and referred him for a physical therapy evaluation. Later that month, Dr. Kim diagnosed plaintiff with osteoarthritis in his left shoulder and prescribed additional pain medication; however, Dr. Kim informed plaintiff that the narcotic medication he requested was not medically indicated. In October 2020, Dr. Kim prescribed plaintiff medication for shoulder pain, two weeks of bed rest, and referred plaintiff to physical therapy. However, he informed plaintiff that the medication he requested, Lyrica, was not recommended for his symptoms in Dr. Kim's medical opinion.

Contrary to plaintiff's position, the Eighth Amendment does not require prison doctors to prescribe whatever medication the patient requests. "A mere difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference." Vasquez v. Conanan, 2023 WL 2624782, at *1 (9th Cir. Mar. 23, 2023) (citations omitted); Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016). "A plaintiff must show that the treatment was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to the plaintiff's health." Id. (citations omitted). Plaintiff has not made the required factual showing on this issue.

Nor has plaintiff shown that Dr. Kim was deliberately indifferent to any lingering effects from a 2011 injuries in a car accident or plaintiff's alleged need for a CPAP machine. Dr. Kim treated plaintiff for pain in several ways, including prescribing medication and referring him to physical therapy. As to plaintiff's depression and mental symptoms, there is no evidence that plaintiff raised these issues with Dr. Kim, whose focus was on plaintiff's physical health. Finally,

10

aside from his allegations in the complaint, which do not carry the weight of evidence on summary judgment, plaintiff has not shown that a CPAP machine was a serious medical need, and there are no facts suggesting that Dr. Kim's failure to prescribe one posed an excessive risk to plaintiff's health.  Dr. Kim is entitled to summary judgment on plaintiff's Eighth Amendment claim.

As to Dr. Spencer, the gravamen of plaintiff's Eighth Amendment claim is that Dr. Spencer refused to change his medication for severe depression and insomnia even though his prescribed medication was ineffective.  But the undisputed facts show that Dr. Spencer was a psychotherapist who lacked authority to prescribe or change medication for an incarcerated person.  As Dr. Spencer was unable to change plaintiff's medication regimen, the failure to do so cannot be deliberate indifference.  To the extent plaintiff claims that Dr. Spencer's overall treatment of his mental symptoms was deliberately indifferent, the undisputed facts show that Dr. Spencer met with plaintiff twelve times in a fifteen-month period and responded to plaintiff's mental health needs based on training and experience.  Plaintiff has adduced no facts suggesting deliberate indifference by Dr. Spencer, who is entitled to summary judgment on plaintiff's Eighth Amendment claim.

VII.    QUALIFIED IMMUNITY

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity shields an officer from liability even if his or her action resulted from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Id. (internal quotation marks and citation omitted).

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case."  Robinson v. York, 566 F.3d 817,

11

821 (9th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  A right is "clearly established" when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that 'every reasonable official would [have understood] that what he is doing violates that right.'"  Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Here, defendants move for qualified immunity on the grounds that the undisputed facts demonstrate they did not violate plaintiff's Eighth Amendment right to adequate prison medical care.  Taking the facts in the light most favorable to plaintiff, for the reasons discussed above, this Court finds that defendants did not violate plaintiff's Eighth Amendment rights.  For this reason, this Court need not address the second prong of the qualified immunity analysis.  See County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").  Alternatively, therefore, defendants are therefore entitled to qualified immunity for plaintiff's Eighth Amendment claims.

VIII.    CONCLUSION

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1.    Defendants' motion for summary judgment (ECF No. 64) be granted; and

2.    Judgment be entered in favor of defendants Spencer and Kim, and this action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to

///

///

appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 8, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

6/darb1419.f&rs

13